HILARY POTASHNER (Bar No. 167060)
Acting Federal Public Defender
Craig A. Harbaugh (Bar No. 194309)
(E-Mail: Craig_Harbaugh@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-4740
Facsimile: (213) 894-0081

Attorneys for Defendant
JUAN DIAZ-RUIZ

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>JUAN DIAZ-RUIZ,<br><br>　　　　Defendant. | Case No. CR-14-466-MMM<br><br>**MOTION TO WITHDRAW GUILTY PLEA**<br><br>Date:　　　　February 9, 2015<br>Time:　　　　1:15 p.m.<br>Courtroom:　850 (Roybal) |

Defendant Juan Diaz-Ruiz, by and through counsel of record, Federal Public Defender, Craig A. Harbaugh, hereby moves this Honorable Court to withdraw his guilty plea. This motion is based upon the attached memorandum of points and authorities, exhibits, and any further evidence as may be adduced at the hearing on this motion.

　　　　　　　　　　　　　　　　Respectfully submitted,
　　　　　　　　　　　　　　　　HILARY POTASHNER
　　　　　　　　　　　　　　　　Acting Federal Public Defender

DATED: January 12, 2015　　　By */s/ Craig A. Harbaugh*
　　　　　　　　　　　　　　　　CRAIG A. HARBAUGH
　　　　　　　　　　　　　　　　Deputy Federal Public Defender

TABLE OF CONTENTS

PAGE(S)

I. INTRODUCTION ..................................................................................................1

II. STATEMENT OF FACTS ...................................................................................2

    A.    Diaz's First Arrival to the United States.......................................................2

    B.    2009 Expedited Removal Proceedings .........................................................2

    C.    Subsequent Removals Based Upon Reinstatement of Expedited ................5

III. ARGUMENT........................................................................................................5

    A.    The *Raya-Vaca* Decision Serves as a Fair and Just Reason for Withdrawal ...................................................................6

    B.    There is a Realistic Possibility Diaz Would Prevail on a Motion to Dismiss His Illegal Reentry Charge.............................................................8

        1.    Plausible Due Process Violation.........................................................9

        2.    Plausible Relief From Expedited Removal .....................................10

IV. CONCLUSION .................................................................................................13

## TABLE OF AUTHORITIES

Page(s)
**Federal Cases**

*United States v. Alvarado*,
    622 F. Supp. 2d 988 (E.D. Cal. 2009) .......................................................................... 6

*United States v. Barajas-Alvarado*,
    655 F.3d 1077 (9th Cir. 2011) ..................................................................................... 13

*United States v. Davis*,
    428 F.3d 802 (9th Cir. 2005) ......................................................................................... 6

*United States v. Ensminger*,
    567 F.3d 587 (9th Cir. 2009) ..................................................................................... 6, 8

*United States v. Hyde*,
    520 U.S. 670, 676-77 (1977) ......................................................................................... 5

*United States v. Garcia*,
    401 F.3d 1008 (9th Cir. 2005) ....................................................................................... 6

*United States v. Mayweather*,
    634 F.3d 498 (9th Cir. 2010) ......................................................................................... 5

*United States v. McTiernan*,
    546 F.3d 1160 (9th Cir. 2008) ................................................................................ 5, 6, 8

*United States v. Ortega–Ascanio*,
    376 F.3d 879 (9th Cir. 2004) ..................................................................................... 5, 6

*United States v. Pacheco-Navarette*,
    432 F.3d 967 (9th Cir. 2005) ......................................................................................... 6

*United States v. Raya-Vaca*,
    771 F.3d 1195 (9th Cir. 2014) ............................................................................. *passim*

*United States v. Reyes–Bonilla*,
    671 F.3d 1036 (9th Cir.2012) ...................................................................................... 10

*United States v. Rojas-Pedrosa*,
    716 F.3d 1253 (9th Cir. 2013) ..................................................................................... 10

**Federal Statutes**

8 U.S.C. 1326 .................................................................................................... 7

8 U.S.C. § 1225 ............................................................................................... 13

8 C.F.R. § 235.3 ................................................................................................ 9

U.S. Const. amend. V ...................................................................................... 7

Fed. R. Crim. P. 11 .......................................................................................... 5

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

After Juan Diaz-Ruiz (Diaz) entered his guilty plea to the illegal reentry charge, the law changed. For Diaz to be guilty of the charge, his prior removal following expedited removal proceedings must be lawful. But the Ninth Circuit's recent decision in *United States v. Raya-Vaca*, 771 F.3d 1195 (9th Cir. 2014), calls into doubt the validity of that removal order and, thus, the validity of Diaz's plea.

In *Raya-Vaca*, the Ninth Circuit held for the first time that the Due Process Clause of the Fifth Amendment applies in expedited removal proceedings to illegal aliens found within the United States. Further, the *Raya-Vaca* Court mandated, as minimum procedural safeguards, an immigration official's duty to advise the alien of the nature of the charges against him and to allow the alien an opportunity to review the alien's sworn statement. Finally, the *Raya-Vaca* Court concluded that when the alien, having suffered this due process violation, has a plausible ground for obtaining relief, the expedited removal is invalid and cannot serve as a basis for an illegal reentry charge.

Here, *Raya-Vaca* provides a fair and just reason for allowing Diaz to withdraw his guilty plea. Given the direct applicability of *Raya-Vaca* to Diaz's case, the decision could have at least plausibly motivated a reasonable person in his position not to have pled guilty had it been the law at the time. Because Diaz was discovered well within U.S. borders, he was entitled to due process protections during his expedited removal proceedings. The record confirms that the immigration official violated due process by failing to notify Diaz of the nature of the allegation and to read to him his statement in Spanish. There are also plausible grounds to believe Diaz would have been granted withdrawal of application for admission. Consequently, Diaz should be allowed to withdraw his plea and challenge the legality of the illegal reentry charge.

//

## II.   STATEMENT OF FACTS

### A.   Diaz's First Arrival to the United States

Diaz lived a difficult life growing up in Mexico.  His parents separated when he was 3 years old, he spent many of his formative years in a children's home, helped care for his special needs brother and began working in the fields at the age of 10.  Dkt. No. 24, Presentence Report, ¶¶ 42-49 (PSR).  Despite the hardship he suffered, Diaz still had no desire to come to the United States.

Diaz's attitude changed, however, when he was kidnapped.  When Diaz was 19 years old, members of the Los Zetas drug cartel kidnapped Diaz for ransom.  To secure his freedom, Diaz's family had to pay the demand to a government agency working in collusion with the cartel.  Upon his release, Diaz no longer felt secure in Mexico and fled to America.  PSR, ¶ 50.

Over the next six years, Diaz made a life for himself in the United States.  He came to California, first to Bakersfield and then settled in Santa Ana.  PSR,   ¶ 50.  It was there that he fell in love with Ani Yeli and the couple had two children together.  One of his sons, Luis Diaz, was born with serious medical problems, and would eventually develop a brain tumor.  PSR, ¶ 51.

### B.   2009 Expedited Removal Proceedings

On July 24, 2009, Diaz was with a group of other Hispanic people in the small town of George West, Texas.[1]  Exhibit D (Form I-213, Record of Deportable/ Inadmissible Alien).[2] George West is about 100 land miles from the closest international border between the United States and Mexico.

---

[1] According to the 2010 Census, George West City has a population of 2,445.

[2] The immigration official prepared two records, which appear to be identical except that each contain original signatures.  Both are included here for the sake of completeness.

2

     Without a warrant, Live Oak County Sheriff deputies arrested Diaz and his companions.[3] Ex. D, p. 2. The purported reason for their arrest was for being "undocumented migrants." Id. After their arrest, Diaz and the others were taken in handcuffs more than 40 miles away to the closest Border Patrol station in Freer, Texas. Id.

     In the early morning hours of July 25, 2009, Border Patrol Agent (BPA) Marciela Hernandez began to process Diaz. After obtaining Diaz's fingerprints and checking them against an agency database, BPA Hernandez found no prior immigration apprehensions. Ex. D, p. 2. She did discover, however, that Diaz had a 2005 conviction in California for which he received 180 days and 3 years of probation but was released from custody without any adverse immigration consequences. Ex. D, pp. 2-3.

     BPA Hernandez then interrogated Diaz. Ex. B (Record of Sworn Statement in Proceedings under Section 235(b)(1) of the Act (Form I-867A)). At the time, Diaz only understood the Spanish language. Ex. C, p. 1 (Declaration of Juan Diaz-Ruiz). In response to questioning, Diaz admitted that he was a Mexican national and had crossed the international border by wading across the Rio Grande River two days earlier. Ex. B, pp. 1-2.

     Following the interrogation, BPA Hernandez prepared a typed-written statement consisting of three pages. See Ex. B. After completing the statement, BPA Hernandez told Diaz to write his initials and place a fingerprint on each page. Exs. B & C. Diaz did not understand what was written on the statement and BPA Hernandez did not translate the statement for him. Ex. C, p. 1. The final page of the statement, the Jurat, contains an acknowledgement signed by Diaz that "I have read (or have had read to

---

[3] The report identifies "Live Oak County" as the arresting agency. The Live Oak County Sheriff's Office is located in George West. See Live Oak County Sheriff's Office, available at http://liveoaksheriff.com/.

3

1 me) this statement." Ex. B, p. 3.  The Jurat indicates that the statement consisted of
2 only "1 pages (including this page)," even though the statement consisted of 3 pages.
3 None of the questions and answers on the Jurat relate to the allegation that served as the
4 basis for the expedited removal.  Ex. B.  Instead, the Jurat covered only the reason
5 why Diaz left Mexico and whether he was concerned for his safety upon his
6 return.  *Id.*

7       BPA Hernandez also initiated expedited removal proceedings against Diaz.
8 She prepared three original notices and orders of removal.  *See* Ex. A (Notice and
9 Order of Expedited Removal forms (Form I-860)).  Each version of the form
10 contained the identical allegation that Diaz illegally entered the country two days
11 earlier.  Ex. A.[4]  Contrary to agency regulation, BPA Hernandez did not have
12 Diaz sign the back of any of the notices.  Ex. A.  Nor did BPA Hernandez read
13 the allegation to Diaz.  Ex. C.

14       During the expedited removal process, BPA Hernandez told Diaz that he
15 faced jail time in California for the probation violation based upon his illegal
16 entry into the United States.  Diaz was later told that California did not want him
17 to return to serve an additional sentence.  Diaz believed the reason for his
18 removal was due to his conviction.  Ex. C.[5]

---

[4] The allegation states in full

> You are an immigrant not in possession of a valid un-expired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Immigration and Nationality Act; to wit: You are a citizen and national of Mexico not in possession of valid U.S. immigration documents that would allow you to enter or remain in the United States legally. You entered illegally into the United States by wading across the Rio Grande River near Laredo, Texas on July 23, 2009 at approximately 9:00 P.M.  You were intending to travel to Amarillo, Texas and reside in violation of U.S. immigration laws.

Ex. A.

[5] The records conflict regarding the actual basis for removal.  According to the Record of Deportable/Inadmissible Alien, Diaz "was processed for Expedited Removal

4

At no time prior to removal did BPA Hernandez advise Diaz that he was entitled to alternative immigration relief, including Withdrawal of Application for Admission. Ex. C. Had he been so informed, Diaz would have requested withdrawal in lieu of expedited removal. *Id.*

At the conclusion of the expedited removal process, Diaz was returned to Mexico at the port of entry in Laredo, Texas. *Id.*

### C. Subsequent Removals Based Upon Reinstatement of Expedited Removal Order

After Diaz left the United States due to the July 2009 expedited removal order, Diaz returned to the United States and was removed two additional times: September 3, 2009 and September 24, 2009. Ex. E. Each time, the immigration official simply reinstated the July 2009 expedited removal order. *Id.*

### III. ARGUMENT

Federal Rule of Criminal Procedure 11(d)(2)(B) provides that a defendant may withdraw a plea of guilty prior to sentencing if he "can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11. "While the defendant is not permitted to withdraw his plea 'simply on a lark,' the 'fair and just standard' is generous and must be applied liberally." *United States v. McTiernan*, 546 F.3d 1160, 1167 (9th Cir. 2008) (quoting *United States v. Hyde*, 520 U.S. 670, 676–77 (1997)). "Fair and just reasons for withdrawal include inadequate Rule 11 plea colloquies, newly discovered evidence, [and] intervening circumstances." *United States v. Ortega–Ascanio*, 376 F.3d 879, 883 (9th Cir. 2004). Under "longstanding" Ninth Circuit precedent, plea withdrawal is ordinarily allowed "for any reason 'that did not exist when the defendant entered his plea.'" *United States v. Mayweather*, 634 F.3d 498, 506 (9th Cir. 2010)

---

(Criminal Alien)." Ex. D. But the Notice to Alien Ordered Removed/Departure Verification states that Diaz was removed as a consequence of having been found inadmissible as an arriving alien. Ex. A.

5

(internal citations omitted).

The defendant need not prove that his "plea is invalid" or "proclaim his innocence." *United States v. Davis*, 428 F.3d 802, 806 (9th Cir. 2005); *United States v. Garcia*, 401 F.3d 1008, 1012 (9th Cir. 2005). Nor is the defendant required to show that he will ultimately succeed on the merits. Rather, he need only establish that the intervening circumstance "could have at least plausibly motivated a reasonable person in [defendant's] position not to have pled guilty had he known about the [intervening circumstance] prior to pleading." *McTiernan*, 546 F.3d at 1168; *Garcia*, 401 F.3d at 1011-12.

### A. The *Raya-Vaca* Decision Serves as a Fair and Just Reason for Withdrawal.

"The general rule is that an intervening change in governing law may operate as a fair and just reason to withdraw a guilty plea." *United States v. Ensminger*, 567 F.3d 587, 594 (9th Cir. 2009); *see, e.g., United States v. Ortega-Ascanio*, 376 F.3d 879, 887 (9th Cir. 2004) (finding district court abused discretion in denying plea withdrawal in light of "an intervening Supreme Court decision that overruled Circuit precedent and gave [the defendant] a plausible ground for dismissal of his indictment"); *United States v. Pacheco-Navarette*, 432 F.3d 967, 969 n. 1 (9th Cir. 2005) (recognizing defendant could have established a fair and just reason to withdraw guilty plea based upon subsequent Supreme Court precedent); *see, e.g., United States v. Alvarado*, 622 F. Supp. 2d 988, 995 (E.D. Cal. 2009) (permitting defendant to withdraw guilty plea based upon intervening extracircuit precedent exposing defendant to a lower mandatory minimum sentence).

Here, the Ninth Circuit's recent decision in *United States v. Raya-Vaca*, 771 F.3d 1195 (9th Cir. 2014), establishes a fair and reason for Diaz to withdraw his guilty plea. In *Raya-Vaca*, the defendant had been charged with illegal

6

reentry after removal in violation of 8 U.S.C. §1326(a). *Id.* at 1200. In support of the charge, the prosecution relied upon Raya-Vaca's expedited removal order in 2011. The defendant moved to dismiss the indictment pursuant to Section 1326(d), arguing that the 2011 expedited removal proceedings did not comport with due process. The district court denied the defendant's motion. The district court found that, even assuming a due process violation had occurred, it was implausible that notwithstanding the violation, the defendant would have been granted alternative relief in the form of withdrawal of application for admission. *Raya-Vaca*, 771 F.3d at 1198-201.

On appeal, the Ninth Circuit reversed. In reaching its conclusion, the Ninth Circuit found it necessary to address the "threshold question whether the Due Process Clause, with its attendant protections, applied to Raya–Vaca at the time of his expedited removal proceedings." *Id.* at 1202; *see* U.S. Const. amend. V. In line with Supreme Court precedent, the Ninth Circuit recognized that an alien present in the United States, even one present without lawful authority, was entitled to due process protections. *Id.* at 1202 (and cases cited therein). Accordingly, the Ninth Circuit held for the first time that aliens who had illegally entered but were apprehended inside the United States, were entitled to due process protections during expedited removal proceedings. *Id.* at 1203.

The Ninth Circuit next determined the scope of an alien's due process rights in the context of expedited removal proceedings. *Id.* at 1203-04. Although Raya-Vaca had identified three separate constitutional violations, the Ninth Circuit found it necessary to address only one: the immigration officer's failure to inform Raya-Vaca of the charge of inadmissibility and to read him (or allow him to read) the officer's sworn statement against him. *Id.* at 1204. The Ninth Circuit concluded that these requirements were not merely required by regulations, but necessary to protect the "fundamental due process rights" of notice and the opportunity to respond. *Id.* at 1204. Notably, and contrary to the Government's argument, the

7

1  Ninth Circuit found that the due process violation was complete based solely upon the
2  regulatory violations, without regard to whether the alien was directly prejudiced by
3  these omissions. *Id.* at 1205-06.
4      Finally, the Ninth Circuit addressed whether Raya-Vaca had demonstrated
5  prejudice, i.e., whether "he had plausible grounds for relief from the removal order."
6  *Raya-Vaca*, 771 F.3d at 1206 (internal citations and quotations omitted). After
7  examining the eligibility criteria, the Ninth Circuit concluded that because Raya-Vaca's
8  particular circumstances demonstrated "some evidentiary basis on which relief could
9  have been granted," he had established plausibility. *Id.* at 1209-10.
10      Here, the *Raya-Vaca* decision could have at least plausibly motivated a
11  reasonable person in Diaz's position not to have pled guilty. Like Raya-Vaca, Diaz was
12  entitled to due process protections during his expedited removal proceeding because he
13  was encountered after having entered the United States. In addition, Diaz's expedited
14  removal order is the only prior immigration order that can serve as a basis for the illegal
15  reentry charge. Thus, *Raya-Vaca* could have provided a vehicle for Diaz to challenge
16  his expedited removal under Section 1326(d) and seek dismissal of the charge.

17  **B.   There is a Realistic Possibility Diaz Would Prevail on a Motion to**
18        **Dismiss His Illegal Reentry Charge.**

19      In determining whether the defendant is allowed to withdraw a guilty plea
20  based upon an intervening circumstance, the Court must consider "its potential
21  application to the case at hand." *Ensminger*, 567 F.3d at 595. Where, as here, the
22  intervening circumstance potentially supports a dispositive motion, the defendant
23  need not establish that he would ultimately prevail. As long as relief is a
24  "realistic possibility," then plea withdrawal is warranted. *See United States v.*
25  *McTiernan*, 546 F.3d 1160, 1168 (9th Cir. 2008) (remanding for hearing on plea
26  withdrawal where defendant claimed that he would have not plead guilty had
27  defense counsel advised him of a potential suppression motion).
28

8

1    In this case, Diaz can easily satisfy this low threshold.  First, there is a
2 plausible due process violation based upon the failure of the immigration officer
3 to notify Diaz of the basis of his expedited removal and to translate his statement
4 into Spanish.  Second, it is plausible Diaz would have been permitted to obtain
5 relief from expedited removal.
6    **1.    Plausible Due Process Violation**
7    As in *Raya-Vaca*, Diaz can establish that the immigration official violated
8 his due process rights.  The Ninth Circuit found that Raya–Vaca had presented
9 sufficient evidence that the immigration officer violated his due process rights.
10 First, the defendant offered a signed declaration in which he denied being
11 informed of the charge and denied being allowed to review his statement.
12 Second, although Raya–Vaca signed the Jurat, this document contained only an
13 acknowledgment that he had "read (or ... had read to [him] ) this statement,
14 consisting of 1 pages (including this page)," even though the statement amounted
15 to four pages.  In addition, the Jurat included "only four questions he was asked
16 and answered, none of which spoke to his admissibility."  Finally, the
17 Government did not argue that the immigration officer complied with the
18 regulations.  *Raya-Vaca*, 771 F.3d at 1205.
19    Consistent with *Raya-Vaca*, the current record provides strong evidence
20 that the immigration official violated Diaz's due process rights.  First, Diaz offers
21 his sworn declaration, which affirms that the immigration official did not
22 translate for him the expedited removal notice or inform him of the basis for the
23 removal.  Second, Diaz did not sign the back of the Form I-860's (Notice and
24 Order of Expedited Removal), contained in the file, as required by regulation.
25 Curiously, BPA Hernandez prepared three original Form I-1860's reflecting the
26 same allegation.  On at least one of the notice forms, BPA Hernandez was
27 obligated to serve Diaz and have him "sign the reverse of the form
28 acknowledging receipt."  8 C.F.R. § 235.3(b)(2)(i).  Nevertheless, not one of the

9

forms reflects Diaz's signature. Finally, consistent with Diaz's understanding of the basis for his removal, the Record of Deportable/Inadmissible Alien states that Diaz was processed for expedited removal as a "Criminal Alien." Ex. D.

In addition, the immigration official did not read Diaz his statement in Spanish and offer him an opportunity to respond. After questioning Diaz, BPA Hernandez simply told Diaz to place his initials and fingerprints at the bottom of each page. She did not translate the statement for him.

Consequently, Diaz is able to establish a plausible violation of his due process rights during the expedited removal proceedings.

### 2. Plausible Relief From Expedited Removal

Diaz can also demonstrate the plausibility that he would have been granted withholding of removal. Although Diaz most show more than a "theoretical possibility," he need not show that relief was "definite[ ]" or even "probable." Rather, he need only demonstrate "some evidentiary basis on which relief *could* have been granted." *Raya-Vaca*, 771 F.3d at 1205 (quoting *United States v. Reyes–Bonilla*, 671 F.3d 1036, 1049–50 (9th Cir.2012) (emphasis added)).

In deciding whether a defendant has shown plausible grounds for relief, courts must first "identify the factors relevant to the agency's exercise of discretion for the relief being sought" and then determine whether "it was plausible that the agency official considering the defendant's case would have granted relief from removal." *Id.* at 1206 (quoting United States v. *Rojas–Pedroza*, 716 F.3d 1253, 1263 (9th Cir.2013)). In *Raya-Vaca*, the Ninth Circuit followed the Inspector's Field Manual guidance to "consider all facts and circumstances related to the case," as well as its non-exhaustive list of factors: "(1) the seriousness of the immigration violation; (2) previous findings of inadmissibility against the alien; (3) intent on the part of the alien to violate the law; (4) ability to easily overcome the ground of inadmissibility; (5) age or poor health of the alien; and (6) other humanitarian or public interest considerations." *Id.* at 1207; *see* INS Inspector's Field Manual § 17.2(a) (2007), available at Westlaw FIM–INSFMAN

17.2, 2007 WL 7710869. The Ninth Circuit also followed the Manual's admonition that withdrawal should "ordinarily" not be permitted "in situations where there is obvious, deliberate fraud on the part of the applicant." *Id.* (citing as an example the use of counterfeit documents).

Applying the Manual's analytical framework to Raya-Vaca's circumstances, the Ninth Circuit concluded that the defendant had demonstrated plausibility of relief. *Id.* at 1207-10. The Ninth Circuit found that because there was no evidence that Raya-Vaca committed fraud when entering the United States, the general prohibition against withdrawal did not apply. *Id.* at 1208.

On the other hand, the Ninth Circuit identified a number of factors that undermined plausibility that Raya-Vaca would have been granted relief. The Ninth Circuit found that Raya-Vaca's immigration violation was "serious" given he was a "recidivist immigration violator" who had accrued six prior illegal reentry violations. In addition, the Court noted that Raya-Vaca had been previously found inadmissible through a stipulated removal. The Ninth Circuit found that his age and good health did not warrant favorable treatment. Finally, the Ninth Circuit found that it was not clear Raya-Vaca could easily overcome his inadmissibility for lack of valid documentation. *Id.*

Nevertheless, the Raya-Vaca Court found that the remaining enumerated factors worked in the alien's favor. Specifically, the Ninth Circuit relied upon the fact that Raya-Vaca's long term partner and brother were U.S. citizens, as well as the humanitarian consideration that his children and other family members lived in the United States. *Id.* at 1208-09.

Finally, the Ninth Circuit considered other non-enumerated factors that either supported or ultimately had no bearing on plausibility. Even though Raya-Vaca had three prior misdemeanor convictions, including one for making a false statement to a police officer, the court concluded that his criminal history was "fairly minimal and does not have much bearing on the plausibility of relief." *Id.* at 1209. In addition, the

11

1  Ninth Circuit relied upon statistical evidence from 2008 the Department of Homeland
2  Security that a significant portion of aliens stopped at the border were granted
3  withdrawal.  See Dep't of Homeland Sec., Annual Report: Immigration Enforcement
4  Actions 2008, at 1, 4 (2009), available at http://www.dhs.gov/xlibrary/assets/statistics/
5  publications/enforcement_ar_08.pdf (reporting that 44 percent of aliens subject to
6  expedited removal proceedings were granted withdrawal of application for removal).
7  The Ninth Circuit found this statistical data persuasive even though Raya-Vaca's
8  expedited removal took place in 2011.  Finally, the Ninth Circuit disregarded the fact
9  that Raya-Vaca had been previously flagged by immigration officials as an alien
10 smuggler.  *Raya-Vaca*, 771 F.3d at 1210.

11      In this case, Diaz presents an equal, if not greater, showing of plausibility than
12 the one presented in *Raya-Vaca*.  First, there is no evidence that Diaz committed fraud
13 in connection with his entry.  Second, compared to Raya-Vaca, Diaz's immigration
14 violation was minor.  While Raya-Vaca was a serial violator who had committed six
15 prior immigration violations, the first time Diaz encountered immigration authorities
16 was the July 2009 expedited removal proceeding.  Third, Diaz had not previously been
17 found to be inadmissible.  Nor had Diaz been suspected of smuggling aliens, whereas
18 Raya-Vaca had been flagged by immigration officials as a smuggler.

19      The remaining factors are generally consistent with Raya-Vaca.  It could be
20 argued that not unlike Raya-Vaca's decision to go "over the mountains," Diaz's
21 "wading across the Rio Grande River" evinced an intent to violate the law.  Diaz is also
22 unable to easily overcome the ground of inadmissibility.  Diaz's relatively young age
23 (23) and absence of any debilitating health problems would have likely been neutral in
24 the examining officer's relief determination.  Like Raya-Vaca, Diaz had a U.S. citizen
25 long-term partner and a U.S. citizen child.  In addition, Diaz's son was born with and
26 continued to suffer from medical problems at the time of the expedited removal, further
27 enhancing the humanitarian considerations.  Finally, Diaz relies upon the same DHS
28 report demonstrating a 44% grant rate in 2008.  Ex. F.  Indeed, this report has even

greater significance in Diaz's case, because the expedited removal occurred only a year later as opposed to Raya-Vaca's expedited removal which took place three years later.

The fact that that Diaz had been previously convicted of a drug felony does not negate the plausibility showing. First, the fact that an alien suffers a felony conviction, even an aggravated felony conviction, does not bar an alien seeking relief through withdrawal of application for admission. *See* 8 U.S.C. § 1225(a)(4). Second, the seriousness of the defendant's prior criminal history is not an enumerated factor in the Manual and, therefore, "carr[ies] little weight." *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1091 (9th Cir. 2011) (dismissing alien's reliance on the fact that his prior convictions were not serious because they were not listed as considerations in the Inspector's Field Manual). Finally, in light of the relatively minor sentence Diaz received, it is unlikely that the immigration official would have viewed his prior felony conviction so severe as to deny Diaz relief. Although serious drug offenses typically result in a prison time, Diaz was sentenced to only 6 months in jail followed by three years of probation.

## IV. CONCLUSION

In sum, Diaz has presented a fair and just reason justifying the withdrawal of his guilty plea. As set forth in the *Raya-Vaca* decision, there are plausible grounds to believe that the expedited removal proceedings violated Diaz's due process rights and that Diaz would have obtained discretionary relief. For the foregoing reasons, Diaz respectfully requests that the Court permit him withdraw his guilty plea.

Respectfully submitted,

HILARY POTASHNER
Acting Federal Public Defender

DATED: January 12, 2015        By  */s/ Craig A. Harbaugh*
                                   Craig A. Harbaugh
                                   Deputy Federal Public Defender

13

**DECLARATION OF CRAIG A. HARBAUGH**

I, Craig A. Harbaugh, declare:

1. I am an attorney with the Office of the Federal Public Defender for the Central District of California. I am licensed to practice law in the State of California and I am admitted to practice in this Court. I represent Juan-Diaz Ruiz in the above matter.

2. In July 2014, Assistant United States Attorney Daniel H. Malvin provided me with a copy of Mr. Diaz's immigration file or "A-File." The discovery provided to me was stamped with bates numbering. On December 17, 2014, I reviewed Mr. Diaz's original A-File at the United States Attorney's Office. At the conclusion of my review, I requested copies of both the front side and back side of various documents in the A-File. On December 31, 2014, AUSA Malvin emailed me copies of the documents I requested. Those documents were not stamped with bates numbering.

3. Exhibit A is Form I-860, Notice and Order of Expedited Removal dated July 25, 2009. There are three original forms and both the front side and back side have been provided for each document. Exhibit A is a true and correct copy of the documents provided to me by AUSA Malvin on December 31, 2014.

4. Exhibit B is Form I-867A, Record of Sworn Statement in Proceedings under Section 235(b)(1) of the Act, dated July 25, 2009. Exhibit B is a true and correct copy of the documents provided to me by AUSA Malvin on December 31, 2014.

5. Exhibit C is the declaration of Mr. Diaz-Ruiz. Exhibit C is a true and correct copy of the declaration signed by Mr. Diaz-Ruiz on January 7, 2015.

6. Exhibit D is Form I-213, Record of Deportable/Inadmissible Alien dated July 24, 2009. There are two original forms. Exhibit C is a true and correct copy of the documents provided to me in discovery by AUSA Malvin in July 2014.

7. Exhibit E consists of immigration forms related to Mr. Diaz's removals on September 3, 2009 and September 24, 2009. Exhibit E is a true and correct copy of the documents provided to me in discovery by AUSA Malvin in July 2014.

8. Exhibit F is the Department of Homeland Security's 2008 Annual Report: Immigration Enforcement Actions available at http://www.dhs.gov/xlibrary/assets/statistics/publications/enforcement_ar_08.pdf . Exhibit F is a true and correct copy of the DHS report.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 12, 2015, at Los Angeles, California.

*/s/ Craig A. Harbaugh*
CRAIG A. HARBAUGH

15