HILARY POTASHNER (Bar No. 167060)
Acting Federal Public Defender
YASMIN CADER (Bar No. 250762)
(E mail: Yasmin_Cader@fd.org)
CRAIG A. HARBAUGH (Bar No. 194309)
(E-Mail:  Craig_Harbaugh@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone:  (213) 894-4740
Facsimile:  (213) 894-0081

Attorneys for Defendant
JUAN DIAZ-RUIZ

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| UNITED STATES OF AMERICA, | Case No. CR-14-466-MMM |
|---|---|
| Plaintiff, | **MOTION TO DISMISS** |
| v. | Date:      May 18, 2015 |
| JUAN DIAZ-RUIZ, | Time:      1:15 p.m. |
| Defendant. | Courtroom:  850 (Roybal) |

Defendant Juan Diaz-Ruiz, by and through counsel of record, Federal Public Defender, Craig A. Harbaugh, hereby moves this Honorable Court to dismiss pursuant to the 8 U.S.C. § 1326(d).  This motion is based upon the attached memorandum of points and authorities, exhibits, and any further evidence as may be adduced at the hearing on this motion.

                    Respectfully submitted,
                    HILARY POTASHNER
                    Acting Federal Public Defender

DATED: April 14, 2015       By */s/ Craig A. Harbaugh*
                                   CRAIG A. HARBAUGH
                                   Deputy Federal Public Defender

TABLE OF CONTENTS

PAGE(S)

I. INTRODUCTION ........................................................................................... 2

II. STATEMENT OF FACTS ............................................................................ 2

    A.    Diaz's First Arrival to the United States ...................................................... 2

    B.    2009 Expedited Removal Proceedings ........................................................ 3

    C.    Subsequent Removals Based Upon Reinstatement of Expedited ............... 5

    D.    Illegal Reentry Prosecution .......................................................................... 5

        1.    Guilty Plea ........................................................................................ 5

        2.    Intervening Ninth Circuit decision in *Raya-Vaca* ............................ 6

        3.    Motion to Withdraw Guilty Plea ...................................................... 7

III. ARGUMENT ................................................................................................ 7

    A.    Diaz-Ruiz's Expedited Removal Violated Due Process ............................. 9

        1.    The Immigration Officer Failed to Advise Diaz of the Grounds for Expedited Removal and Read Him His Statement ..................... 9

        2.    The Immigration Officer Failed to Advise Diaz of His Eligibility for Relief ........................................................................................ 10

    B.    Diaz Was Prejudiced By the Due Process Violations Because He Had a Plausible Claim for Relief ..................................................................... 11

    C.    Because Diaz Was Subjected to Expedited Removal, He Was Denied All Administrative Remedies and Judicial Review .................................. 14

IV. CONCLUSION ........................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

*United States v. Alvarado-Pineda*,
    774 F.3d 1198 (9th Cir. 2014) .............................................................................. 8

*United States v. Barajas-Alvarado*,
    655 F.3d 1077 (9th Cir.2011) ........................................................................ 8, 13

*United States v. Camacho-Lopez*,
    450 F.3d 928 (9th Cir. 2006) ................................................................................ 8

*United States v. Garcia-Santana*,
    774 F.3d 528 (9th Cir. 2014) .............................................................................. 10

*United States v. Mendoza-Lopez*,
    481 U.S. 828 (1987) .............................................................................................. 8

*United States v. Raya-Vaca*,
    771 F.3d 1195 (9th Cir. 2014) ..................................................................*passim*

*United States v. Reyes-Bonilla*,
    671 F.3d 1036 (9th Cir.2012) ............................................................................ 11

*United States v. Rojas-Pedroza*,
    716 F.3d 1253 (9th Cir.2013) ............................................................................ 11

*United States v. Ubaldo-Figueroa*,
    364 F.3d 1042 (9th Cir. 2004) .............................................................................. 8

*United States v. Zarate-Martinez*,
    133 F.3d 1194 (9th Cir. 1998) .............................................................................. 8

## FEDERAL STATUTES

8 C.F.R. § 235.3(b)(2)(i) ............................................................................................ 11

8 U.S.C. § 1225(a)(4) ........................................................................................ 10, 13

8 U.S.C. § 1326(d) ............................................................................................*passim*

U.S. Const. amend. V ................................................................................................ 6

## MISCELLANOUS

INS Inspector's Field Manual (2007),
    2007 WL 7710869 .............................................................................................. 11

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Juan Diaz-Ruiz is charged with one count of illegally reentering the United States after deportation, in violation of 8 U.S.C. § 1326. Diaz cannot be convicted of illegal reentry because defects in his underlying deportation proceedings violated his right to due process. Specifically, the immigration officer failed to (1) advise Diaz of the grounds for his removal; (2) read Diaz his statement; and (3) advise Diaz of his eligibility for relief. As a result of these violations, both individually and collectively, Diaz was prejudiced in light of plausible grounds to believe he would have qualified for withdrawal of application for admission. Accordingly, because the sole basis for Diaz's illegal reentry prosecution is a fundamentally flawed expedited removal proceeding, Diaz's indictment must be dismissed.[1]

## II. STATEMENT OF FACTS

### A. Diaz's First Arrival to the United States

Diaz lived a difficult life growing up in Mexico. His parents separated when he was 3 years old, he spent many of his formative years in a children's home, helped care for his special needs brother and began working in the fields at the age of 10. Dkt. No. 24, Presentence Report, ¶¶ 42-49 (PSR). Despite the hardship he suffered, Diaz still had no desire to come to the United States.

Diaz's attitude changed, however, when he was kidnapped. When Diaz was 19 years old, members of the Los Zetas drug cartel kidnapped Diaz for ransom. To secure his freedom, Diaz's family had to pay the demand to a government agency working in

---

[1] Diaz-Ruiz previously moved to withdraw his guilty plea in light of the Ninth Circuit's intervening decision in *United States v. Raya-Vaca*, 771 F.3d 1195 (9th Cir. 2014). The Government conceded that Diaz-Ruiz had presented a fair and just reason to withdraw his plea. That motion is currently pending before the Court.

1 collusion with the cartel. Upon his release, Diaz no longer felt secure in Mexico and
2 fled to America. PSR, ¶ 50.

3       Over the next six years, Diaz made a life for himself in the United States. He
4 came to California, first to Bakersfield and then settled in Santa Ana. PSR, ¶ 50. It
5 was there that he fell in love with Ani Yeli and the couple had two children together.
6 One of his sons, Luis Diaz, was born with serious medical problems, and would
7 eventually develop a brain tumor. PSR, ¶ 51.

**B.     2009 Expedited Removal Proceedings**

9       On July 24, 2009, Diaz was with a group of other Hispanic people in the small
10 town of George West, Texas.[2] Exhibit D (Form I-213, Record of Deportable/
11 Inadmissible Alien).[3] George West is about 100 land miles from the closest
12 international border between the United States and Mexico.

13       Without a warrant, Live Oak County Sheriff deputies arrested Diaz and his
14 companions.[4] Ex. D, p. 2. The purported reason for their arrest was for being
15 "undocumented migrants." *Id*. Following arrest, Diaz was taken in handcuffs more
16 than 40 miles away to the closest Border Patrol station in Freer, Texas. *Id*.

17       In the early morning of July 25, 2009, Border Patrol Agent Marciela Hernandez
18 began to process Diaz. After obtaining Diaz's fingerprints and checking them against
19 an agency database, BPA Hernandez found no prior immigration apprehensions. Ex.
20 D, p. 2. She did discover, however, that Diaz had a 2005 conviction in California for
21 which he received 180 days and 3 years of probation but was released from custody
22 without any adverse immigration consequences. Ex. D, pp. 2-3.

---

[2] According to the 2010 Census, George West City has a population of 2,445.

[3] The immigration official prepared two records, which appear to be identical except that each contain original signatures. Both are included here for the sake of completeness.

[4] The report identifies "Live Oak County" as the arresting agency. The Live Oak County Sheriff's Office is located in George West. *See* Live Oak County Sheriff's Office, available at http://liveoaksheriff.com/.

3

BPA Hernandez then interrogated Diaz. Ex. B (Record of Sworn Statement in Proceedings under Section 235(b )(1) of the Act (Form I-867A)). At the time, Diaz only understood the Spanish language. Ex. C, p. 1 (Declaration of Juan Diaz-Ruiz). In response to questioning, Diaz admitted that he was a Mexican national and had crossed the international border by wading across the Rio Grande River two days earlier. Ex. B, pp. 1-2.

Following the interrogation, BPA Hernandez prepared a typed-written statement consisting of three pages. See Ex. B. After completing the statement, BPA Hernandez told Diaz to write his initials and place a fingerprint on each page. Exs. B & C. Diaz did not understand what was written on the statement and BPA Hernandez did not translate the statement for him. Ex. C, p. 1. The final page of the statement, the Jurat, contains an acknowledgement signed by Diaz that "I have read (or have had read to me) this statement." Ex. B, p. 3. The Jurat indicates that the statement comprised only "1 pages (including this page)," even though the statement consisted of 3 total pages. None of the questions and answers on the Jurat relate to the allegation that served as the basis for the expedited removal. Ex. B. Instead, the Jurat covered only the reason why Diaz left Mexico and whether he was concerned for his safety upon his return. *Id.*

Next, BPA Hernandez initiated expedited removal proceedings against Diaz. She prepared three original Form I-860, Notice and Order of Expedited Removal. *See* Ex. A. Each version contained the identical allegation that Diaz illegally entered the country two days earlier. *Id.*[5] BPA Hernandez did not have Diaz sign the back of any of the notices. Ex. A. Nor did BPA Hernandez read the allegation to Diaz. Ex. C.

---

[5] The allegation states in full:
> You are an immigrant not in possession of a valid un-expired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Immigration and Nationality Act; to wit: You are a citizen and national of Mexico not in possession of valid U.S. immigration documents that would allow you to enter or remain in the United States legally. You entered illegally into the United States by wading across the Rio Grande River near Laredo, Texas on July 23, 2009 at approximately

4

During the expedited removal process, BPA Hernandez told Diaz that he faced jail time in California for the probation violation based upon his illegal entry into the United States. Diaz was later told that California did not want him to return to serve an additional sentence. Diaz believed the reason for his removal was due to his conviction. Ex. C.[6]

At no time prior to removal did BPA Hernandez advise Diaz that he was entitled to alternative immigration relief, including Withdrawal of Application for Admission. Ex. C. Had he been so informed, Diaz would have requested withdrawal in lieu of expedited removal. *Id.*

At the conclusion of the expedited removal process, Diaz was returned to Mexico at the port of entry in Laredo, Texas. *Id.*

**C.   Subsequent Removals Based Upon Reinstatement of Expedited Removal Order**

After Diaz left the United States due to the July 2009 expedited removal order, Diaz returned to the United States and was removed two additional times: September 3, 2009 and September 24, 2009. Ex. E. Each time, the immigration official simply reinstated the July 2009 expedited removal order. *Id.*

**D.   Illegal Reentry Prosecution**

**1.   Guilty Plea**

On July 17, 2014, Diaz-Ruiz was arrested on a criminal complaint. Pursuant to the "Fast Track" program, Diaz-Ruiz pled guilty to an information charging a single count of illegal reentry. The information, alleges, in pertinent part:

---

9:00 P.M. You were intending to travel to Amarillo, Texas and reside in violation of U.S. immigration laws.

Ex. A.

[6] The records conflict regarding the actual basis for removal. According to the Record of Deportable/Inadmissible Alien, Diaz "was processed for Expedited Removal (Criminal Alien)." Ex. D. But the Notice to Alien Ordered Removed/Departure Verification states that Diaz was removed as a consequence of having been found inadmissible as an arriving alien. Ex. A.

5

> On or about January 9, 2014, defendant JUAN DIAZ RUIZ, also known as ("aka") Juan Ruiz Diaz, an alien, who had been officially deported and removed from the United States on or about July 25, 2009, September 3, 2009, and September 24, 2009, was found in Orange County, within the Central District of California, after knowingly and voluntarily re-entering and remaining in the United States . . .

Information, Dkt No. 12.

### 2. Intervening Ninth Circuit Decision in *Raya-Vaca*

On November 10, 2014, the Ninth Circuit issued its decision in in *United States v. Raya-Vaca*, 771 F.3d 1195 (9th Cir. 2014). In *Raya-Vaca*, the defendant had been charged with illegal reentry after removal in violation of 8 U.S.C. §1326(a). *Id.* at 1200. In support of the charge, the prosecution relied upon Raya-Vaca's expedited removal order in 2011. The defendant moved to dismiss the indictment pursuant to Section 1326(d), arguing that the 2011 expedited removal proceedings did not comport with due process but the district court denied the defendant's motion. *Raya-Vaca*, 771 F.3d at 1198-201.

On appeal, the Ninth Circuit reversed. In reaching its conclusion, the Ninth Circuit found it necessary to address the "threshold question whether the Due Process Clause, with its attendant protections, applied to Raya–Vaca at the time of his expedited removal proceedings." *Id.* at 1202; *see* U.S. Const. amend. V. In line with Supreme Court precedent, the Ninth Circuit recognized that an alien present in the United States, even one present without lawful authority, was entitled to due process protections. *Id.* at 1202 (and cases cited therein). Accordingly, the Ninth Circuit held for the first time that aliens who had illegally entered but were apprehended inside the United States, were entitled to due process protections during expedited removal proceedings. *Id.* at 1203.

The Ninth Circuit next determined the scope of an alien's due process rights in the context of expedited removal proceedings. *Id.* at 1203-04. Although Raya-Vaca had identified three separate constitutional violations, the Ninth Circuit found it necessary to address only one: the immigration officer's failure to inform Raya-Vaca

6

of the charge of inadmissibility and to read him (or allow him to read) the officer's sworn statement against him. *Id.* at 1204. The Ninth Circuit concluded that these requirements were not merely required by regulations, but necessary to protect the "fundamental due process rights" of notice and the opportunity to respond. *Id.* at 1204. Notably, and contrary to the Government's argument, the Ninth Circuit found that the due process violation was complete based solely upon the regulatory violations, without regard to whether the alien was directly prejudiced by these specific omissions. *Id.* at 1205-06.

Finally, the Ninth Circuit addressed whether Raya-Vaca had demonstrated prejudice, i.e., whether "he had plausible grounds for relief from the removal order." *Raya-Vaca*, 771 F.3d at 1206 (internal citations and quotations omitted). After examining the eligibility criteria, the Ninth Circuit concluded that because Raya-Vaca's particular circumstances demonstrated "some evidentiary basis on which relief could have been granted," he had established plausibility. *Id.* at 1209-10.

### 3. Motion to Withdraw Guilty Plea

On January 12, 2014, Diaz-Ruiz moved to withdraw his guilty plea based upon the *Raya-Vaca* decision. Dkt No. 30. On January 16, 2014, the Government, while not conceding that Diaz-Ruiz was entitled to relief, agreed that *Raya-Vaca* presented a fair and just reason to withdraw his plea. Dkt No. 32. The motion is currently pending before the Court.

## III.  ARGUMENT

"To convict an alien criminal defendant of illegal reentry under 8 U.S.C. § 1326, the government must prove that the alien left the United States under order of exclusion, deportation, or removal, and then illegally reentered." *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1079 (9th Cir.2011). "In a criminal prosecution under section 1326, the Due Process Clause of the Fifth Amendment requires a meaningful opportunity for judicial review of the underlying deportation." *United States v. Zarate-Martinez*, 133 F.3d 1194, 1197 (9th Cir. 1998); *United States v.*

*Ubaldo-Figueroa*, 364 F.3d 1042, 1047-48 (9th Cir. 2004) ("A defendant charged with illegal reentry under 8 U.S.C. § 1326 has a Fifth Amendment right to collaterally attack his removal order because the removal order serves as a predicate element of his conviction."); *United States v. Mendoza-Lopez*, 481 U.S. 828, 837-38 (1987) ("Our cases establish that where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be some meaningful review of the administrative proceeding.").

Section 1326(d), which codifies this constitutional guarantee, authorizes collateral attack on three conditions: (1) that the alien exhausted all administrative remedies available to him to appeal his removal order, (2) that the underlying removal proceedings at which the order was issued improperly deprived him of the opportunity for judicial review, and (3) that the entry of the order was fundamentally unfair. 8 U.S.C. § 1326(d). Regarding the third prong, "[a]n underlying order is 'fundamentally unfair' if (a) a defendant's due process rights were violated by defects in his underlying deportation proceeding, and (b) he suffered prejudice as a result of the defects." *United States v. Alvarado-Pineda*, 774 F.3d 1198, 1201 (9th Cir. 2014). Where a defendant satisfies the three-part test, the indictment must be dismissed. *United States v. Camacho-Lopez*, 450 F.3d 928, 930 (9th Cir. 2006).

Here, Diaz-Ruiz is able to meet all three prongs of test. His expedited removal --- which is the only qualifying deportation for purposes of his illegal reentry prosecution --- was obtained in violation of his due process rights.

Because the first and second prongs are informed by the third, the analysis begins with the third prong, *i.e.*, that the entry of the removal order was fundamentally unfair. The above requirements will be discussed in the following order: violation of due process rights, exhaustion of administrative remedies and deprivation of judicial review, and prejudice.

### A. Diaz's Expedited Removal Violated Due Process

#### 1. The Immigration Officer Failed to Advise Diaz of the Grounds for Expedited Removal and Read Him His Statement

In this case, Diaz's due process rights were violated during the expedited removal proceedings. Because Diaz was encountered after having entered the United States, he was entitled to due process protections during his expedited removal proceeding. But the immigration officer violated Diaz's due process rights by failing to advise him of the grounds for his removal and read his statement in Spanish.

In *Raya-Vaca*, the Ninth Circuit outlined the evidence sufficient to establish a due process violation based upon the immigration officer's failure to advise the alien regarding the notice and read the alien's statement. There, Raya-Vaca offered a signed declaration in which he denied being informed of the charge and denied being allowed to review his statement. Although Raya-Vaca signed the Jurat, this document contained only an acknowledgment that he had "read (or ... had read to [him] ) this statement, consisting of 1 pages (including this page)," even though the statement amounted to four pages. In addition, the Jurat included "only four questions he was asked and answered, none of which spoke to his admissibility." *Raya-Vaca*, 771 F.3d at 1205.

Consistent with *Raya-Vaca*, the current record provides strong evidence that the immigration official violated Diaz's due process rights. Diaz offers his sworn declaration, which affirms that the immigration official did not translate for him the expedited removal notice or inform him of the basis for the removal. According to Diaz, the reason he was given for being removed was his criminal conviction, not entering the crossing the border illegally.

Diaz's case involves further corroborative evidence not present in *Raya-Vaca*. First, the Record of Deportable/Inadmissible Alien comports with Diaz's understanding of the reason for his removal. This report states that Diaz was processed for expedited removal as a "Criminal Alien." Ex. D.

Second, immigration regulations require that, in order to establish receipt of the Notice and Order of Expedited Removal (Form I-860), the alien must "sign the reverse of the form acknowledging receipt." 8 C.F.R. § 235.3(b)(2)(i). Curiously, BPA Hernandez prepared three original Form I-1860's reflecting the same allegation. On at least one of the notice forms, BPA Hernandez was obligated to serve Diaz and have him "sign the reverse of the form acknowledging receipt." 8 C.F.R. § 235.3(b)(2)(i). But none of these records reflects Diaz's signature.

The immigration official also failed read Diaz his statement in Spanish and offer him an opportunity to respond. After questioning Diaz, BPA Hernandez simply told Diaz to place his initials and fingerprints at the bottom of each page. She did not translate the entire statement for him.

### 2. Immigration Officer Failed to Advise Diaz of His Eligibility for Relief

Although the Ninth Circuit found it unnecessary to address this issue in *Raya-Vaca*, there is an additional due process violation in Diaz's case. The immigration failed to advise Diaz of his eligibility for relief from removal.

As the Ninth Circuit recently held, "[a]n immigration official's failure to advise an alien of his apparent eligibility for relief from removal . . . violates his due process rights." *United States v. Garcia-Santana*, 774 F.3d 528, 533 (9th Cir. 2014).

In this case, Diaz was never informed of his eligibility of withdrawal of application for admission. 8 U.S.C. § 1225(a)(4) ("An alien applying for admission may, in the discretion of the Attorney General and at any time, be permitted to withdraw the application for admission and depart immediately from the United States."). The failure to advise Diaz regarding this form of relief violated his due process rights.

/ / /

/ / /

/ / /

### B. Diaz Was Prejudiced By the Due Process Violations Because He Had a Plausible Claim for Relief

Diaz was prejudiced as a result of the due process violations during his expedited removal proceeding.[7]  Based upon the relevant circumstances present at the time of the expedited removal, there are plausible grounds to believe he would have been granted relief in the form of withdrawal of application for admission.

To demonstrate prejudice, an alien must show "plausible grounds for relief from the removal order." *Raya-Vaca*, 771 F.3d at 1206.  Although more than a "theoretical possibility" is required, the likelihood of relief does not need to be "definite[ ]" or even "probable."  Rather, there must be only "some evidentiary basis on which relief *could* have been granted." *Raya-Vaca*, 771 F.3d at 1205 (emphasis added)).

In deciding whether a defendant has shown plausible grounds for relief, courts must first "identify the factors relevant to the agency's exercise of discretion for the relief being sought" and then determine whether "it was plausible that the agency official considering the defendant's case would have granted relief from removal." *Id.* at 1206 (quoting *United States v. Rojas–Pedroza*, 716 F.3d 1253, 1263 (9th Cir.2013)).  In *Raya-Vaca*, the Ninth Circuit adopted the Inspector's Field Manual for assessing plausibility of relief for a withdrawal of application for admission.  *Id.*  The Manual directs immigration officers to "consider all facts and circumstances related to the case," as well as its non-exhaustive list of factors:  "(1) the seriousness of the immigration violation; (2) previous findings of inadmissibility against the alien; (3) intent on the part of the alien to violate the law; (4) ability to easily overcome the ground of inadmissibility; (5) age or poor health of the alien; and (6) other humanitarian or public interest considerations." *Id.* at 1207; *see* INS Inspector's Field Manual § 17.2(a) (2007), available at Westlaw FIM–INSFMAN 17.2, 2007 WL

---

[7] Consistent with *Raya-Vaca*, Diaz need not establish that the immigration officer's failure to advise him of his eligibility for relief constituted a due process violation or that he was prejudiced as a result of such violation.

11

7710869. The Manual admonishes that withdrawal should "ordinarily" not be permitted "in situations where there is obvious, deliberate fraud on the part of the applicant." *Id*. (citing as an example the use of counterfeit documents).

Applying the Manual's analytical framework to Raya-Vaca's circumstances, the Ninth Circuit concluded that the defendant had demonstrated plausibility of relief. *Id.* at 1207-10. The Ninth Circuit found that because there was no evidence that Raya-Vaca committed fraud when entering the United States, the general prohibition against withdrawal did not apply. *Id.* at 1208.

On the other hand, the Ninth Circuit identified a number of factors that undermined plausibility that Raya-Vaca would have been granted relief. The Ninth Circuit found that Raya-Vaca's immigration violation was "serious" given he was a "recidivist immigration violator" who had accrued six prior illegal reentry violations. In addition, the Court noted that Raya-Vaca had been previously found inadmissible through a stipulated removal. The Ninth Circuit found that his age and good health did not warrant favorable treatment. Finally, the Ninth Circuit found that it was not clear Raya-Vaca could easily overcome his inadmissibility for lack of valid documentation. *Id.*

Nevertheless, the Raya-Vaca Court found that the remaining enumerated factors worked in the alien's favor. Specifically, the Ninth Circuit relied upon the fact that Raya-Vaca's long term partner and brother were U.S. citizens, as well as the humanitarian consideration that his children and other family members lived in the United States. *Id.* at 1208-09.

Finally, the Ninth Circuit considered other non-enumerated factors that either supported or ultimately had no bearing on plausibility. Even though Raya-Vaca had three prior misdemeanor convictions, including one for making a false statement to a police officer, the court concluded that his criminal history was "fairly minimal and does not have much bearing on the plausibility of relief." *Id.* at 1209. In addition, the Ninth Circuit relied upon statistical evidence from 2008 the Department of Homeland

12

Security that a significant portion of aliens stopped at the border were granted withdrawal. The Ninth Circuit found this statistical data persuasive even though Raya-Vaca's expedited removal took place in 2011. Finally, the Ninth Circuit disregarded the fact that Raya-Vaca had been previously flagged by immigration officials as an alien smuggler. *Raya-Vaca*, 771 F.3d at 1210.

In this case, Diaz presents an equal, if not greater, showing of plausibility than the one presented in *Raya-Vaca*. First, there is no evidence that Diaz committed fraud in connection with his entry. Second, compared to Raya-Vaca, Diaz's immigration violation was minor. While Raya-Vaca was a serial violator who had committed six prior immigration violations, Diaz's first encounter with immigration authorities occurred during the July 2009 expedited removal proceeding. Third, Diaz had not previously been found to be inadmissible. Nor had Diaz been suspected of smuggling aliens, whereas Raya-Vaca had been flagged by immigration officials as a smuggler.

The remaining factors are generally consistent with Raya-Vaca. Diaz had a U.S. citizen long-term partner and a U.S. citizen child. In addition, Diaz's son was born with and continued to suffer from medical problems at the time of the expedited removal, further enhancing the humanitarian considerations. It could be argued that Diaz's "wading across the Rio Grande River," not unlike Raya-Vaca's decision to go "over the mountains," evinced an intent to violate the law. Diaz is also unable to easily overcome the ground of inadmissibility. Diaz's relatively young age (23) and absence of any debilitating health problems would have likely been neutral in the examining officer's relief determination. Finally, Diaz relies upon the same DHS report demonstrating a 44% grant rate in 2008. Ex. F. Indeed, this report has even greater significance in Diaz's case, because the expedited removal occurred only a year later as opposed to Raya-Vaca's expedited removal which took place three years later.

The fact that that Diaz had been previously convicted of a drug felony does not vitiate the plausibility showing. A felony conviction, even an aggravated felony conviction, does not bar an alien seeking relief through withdrawal of application for

13

admission. *See* 8 U.S.C. § 1225(a)(4). Further, the seriousness of the defendant's prior criminal history is not an enumerated factor in the Manual and, as such, "carr[ies] little weight." *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1091 (9th Cir. 2011) (dismissing alien's reliance on the fact that his prior convictions were not serious because they were not listed as considerations in the Inspector's Field Manual). In light of the relatively minor sentence Diaz received, it is unlikely that the immigration official would have viewed his prior felony conviction so severe as to deny Diaz relief. Although serious drug offenses typically result in a prison time, Diaz was sentenced to only 6 months in jail followed by three years of probation.

### C. Because Diaz Was Subjected to Expedited Removal, He Was Denied All Administrative Remedies and Judicial Review

By the very nature of expedited removal proceedings, Diaz has established the first two elements of a successful § 1326(d) motion with respect to his removal. Because expedited removal proceedings deprive an alien of the opportunity to pursue administrative remedies or judicial review, Diaz is excused from these requirements.

In *Raya-Vaca*, the Ninth Circuit held that an alien subject to expedited removal automatically satisfies the administrative remedy and judicial review requirements under 1326(d). *Raya-Vaca*, 771 F.3d at 1202. As the Court reasoned (and the Government conceded), "the statute governing expedited removal proceedings afford[s] [an alien] no opportunity for administrative or judicial review." *Id*.

### IV. CONCLUSION

For the foregoing reasons, Diaz respectfully requests that the Court dismiss the indictment.

Respectfully submitted,

HILARY POTASHNER
Acting Federal Public Defender

DATED: April 14, 2015        By  */s/ Craig A. Harbaugh*

Craig A. Harbaugh
Deputy Federal Public Defender

14