UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JUAN DIAZ RUIZ A/K/A JUAN RUIZ DIAZ,<br><br>Defendant. | CASE NO. CR 14-00466 MMM<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS |

On August 13, 2014, defendant Juan Diaz Ruiz a/k/a Juan Ruiz Diaz ("Diaz") was charged in a one count information with being an illegal alien found in the United States following removal or deportation in violation of 8 U.S.C. § 1326.[1] On September 8, 2014, the court accepted Diaz's guilty plea and set sentencing for December 8, 2014.[2] Thereafter, Diaz filed two *ex parte* applications to continue sentencing based on the Ninth Circuit's decision in *United States v. Raya-Vaca*, 771 F.3d 1195 (9th Cir. 2014). The *Raya-Vaca* court held that there had been a due

---

[1] Information, Docket No. 12 (Aug. 13, 2014).

[2] Minutes of Guilty Plea, Docket No. 22 (Sept. 8, 2014).

process violation on facts purportedly similar to those in this case.[3] On January 12, 2015, Diaz filed a motion to withdraw his guilty plea in light of *Raya-Vaca*.[4] The government consented to Diaz's withdrawal of his guilty plea on January 16, 2015,[5] and the court granted the motion.[6]

On April 14, 2015, Diaz filed a motion to dismiss,[7] which the government opposes.[8]

## I. FACTUAL BACKGROUND

On August 13, 2014, the government filed an information alleging that Diaz was an alien who had been officially deported or removed from the United States on or about July 25, 2009, September 3, 2009, and September 24, 2009. It charged that on January 9, 2014, Diaz had been found in Orange County, California, after knowingly and voluntarily reentering and remaining in the United States without having obtained permission from the Attorney General or his designated successor, the Secretary for Homeland Security, to do so.[9]

The information alleges that at least one of Diaz's prior deportations or removals occurred following his conviction for an aggravated felony. Specifically, the government asserted that, on or about March 24, 2005, Diaz was convicted of possession of heroin for sale in violation of California Health and Safety Code § 11351 in Orange Superior Court, Case Number 05NF0918.[10] The government thus charged Diaz under 8 U.S.C. §§ 1326(a), (b)(2).

---

[3]Order Granting Continuance of Sentencing, Docket No. 27 (Nov. 19, 2014); Order Granting Continuance of Sentencing, Docket No. 29 (Dec. 11, 2014).

[4]Motion to Withdraw Guilty Plea, Docket No. 30 (Jan. 12, 2015).

[5]Government's Consent to Allow Guilty Plea, Docket No. 32 (Jan. 16, 2015).

[6]Order Granting Request to Withdraw Guilty Plea, Docket No. 40 (May 11, 2015).

[7]Motion to Dismiss ("Motion"), Docket No. 35 (Apr. 14, 2015).

[8]Opposition to Motion to Dismiss ("Opposition"), Docket No. 38 (Apr. 28, 2015).

[9]Information at 1.

[10]*Id.* at 2.

## II.  DISCUSSION

### A.      Legal Standard Governing Motions to Dismiss an 8 U.S.C. § 1326 Information

For a defendant to be convicted of violating 8 U.S.C. § 1326, the government must prove beyond a reasonable doubt that the defendant "left the United States under order of exclusion, deportation, or removal, and then illegally reentered." *United States v. Barajas–Alvarado*, 655 F.3d 1077, 1079 (9th Cir. 2011).

To challenge a prior deportation/removal order successfully, a defendant must demonstrate that (1) he exhausted the administrative remedies available to seek relief from the order; (2) deportation proceedings "improperly deprived [him] of the opportunity for judicial review"; and (3) entry of the deportation/removal order was "fundamentally unfair."  8 U.S.C. § 1326(d).  "To satisfy the third prong – that the order was fundamentally unfair – the defendant bears the burden of establishing both that the 'deportation proceeding violate[d] [his] due process rights' and that the violation caused prejudice." *Raya-Vaca*, 771 F.3d at 1201-02 (quoting *United States v. Leon–Leon*, 35 F.3d 1428, 1431 (9th Cir. 1994) (alterations original)).

### B.      Whether the Court Should Grant Diaz's Motion to Dismiss

Diaz asserts that the expedited removal proceedings that took place on July 25, 2009 cannot serve as the predicate for an alleged violation of § 1326 because he was denied due process due to procedural errors during those proceedings.[11]  He contends that, but for the procedural errors, he would have asked to withdraw his application for admission, and that it is plausible the immigration officer would have granted him such relief.

It is clear that "the statute governing expedited removal proceedings afforded [Diaz] no opportunity for administrative or judicial review." *Raya-Vaca*, 771 F.3d at 1202; *Barajas-Alvarado*, 655 F.3d at 1082 ("[T]he [Immigration & Nationality Act] precludes meaningful judicial review of the validity of the proceedings that result in an expedited removal order"); see 8 U.S.C. §

---

[11]Diaz's subsequent removals on September 3, 2009 and September 24, 2009 were based on reinstatement of the July 25, 2009 expedited removal order.  See Motion, Exh. E (Notices of Intent/Decision to Reinstate Prior Order).  Thus, the sole issue is whether the July 25, 2009 deportation hearing complied with due process, and, if it did not, whether there was resulting prejudice.

1225(b)(1)(C) ("Except as provided [in a subparagraph concerning credible-fear interviews], a removal order . . . is not subject to administrative appeal"); *id.*, § 1225(b)(1)(A)(i) ("If an immigration officer determines that an alien . . . who is arriving in the United States . . . is inadmissible . . . , the officer shall order the alien removed from the United States *without further hearing or review*. . ." (emphasis added)). The court "therefore conclude[s] that [Diaz] exhausted all available administrative remedies and was deprived of the opportunity for judicial review," in satisfaction of the first requirement of § 1326(d). *Raya-Vaca*, 771 F.3d at 1202.

Diaz argues that his due process rights were violated due to procedural irregularities in the expedited removal proceeding. This include that the fact that the jurat attached to his sworn statement indicates that it consists of one page, when in fact it was three pages long. Diaz also maintains that the a patrol agent failed to read the allegations of removability to him, including that he "was entitled to alterative immigration relief, including [w]ithdraw of [his] [a]pplication for [a]dmission."[12] In *Raya-Vaca*, the Ninth Circuit held that:

> "Due process always requires, at a minimum, notice and an opportunity to respond. The regulations instructing the immigration officer to advise an alien of the charge against him and to permit the alien to read or be read the sworn statement prepared in his name protect those fundamental due process rights: notice of the charge the alien faces and the alien's opportunity to respond to that charge. Accordingly, because Raya-Vaca was protected by the Due Process Clause when he faced removal, we conclude that any failure to inform Raya-Vaca of the charge against him and to provide him the opportunity to review the sworn statement constituted a violation of Raya-Vaca's due process rights." *Raya-Vaca*, 771 F.3d at 1204.

Applying this standard, the court concluded that Raya-Vaca had shown that his due process rights were violated on facts similar to this case. See *id*. at 1205 ("We further conclude that Raya-Vaca's due process rights to notice and an opportunity to respond were indeed violated during his expedited removal proceedings."). It noted that Raya-Vaca acknowledged that he signed a jurat

---

[12]Motion at 4-5.

4

indicating that his statement was one page long, when in fact it comprised four pages. The court also noted there was no evidence suggesting that Raya-Vaca had been advised "of the charge against him," or that anyone had "read[ ] to him, or allow[ed] him to read, the sworn statement." See *id*. ("Further, Raya-Vaca acknowledged on the Jurat that he had 'read (or . . . had read to [him] ) this statement, consisting of 1 pages (including this page).' However, the Record of Sworn Statement and Jurat together totaled four pages, and the Jurat – the sole page Raya-Vaca acknowledged having read – including only four questions he was asked and answered, none of which spoke to his admissibility. Beyond suggesting that the number of pages listed on the Jurat was perhaps a typographical error, the Government does not argue that the immigration officer did indeed comply with the regulation at issue by advising Raya-Vaca of the charge against him and reading to him, or allowing him to read, the sworn statement").

In this case, the government concedes there was a procedural error regarding the jurat, and assumes for purposes of this motion that the border patrol agent failed to read the allegations regarding removability to Diaz.[13] Thus, for purposes of this motion, it admits there was a due process violation under *Raya-Vaca*. The government argues, however, that Diaz cannot demonstrate he was prejudiced by the violation.[14]

To demonstrate that the expedited removal order was fundamentally unfair, Diaz "must . . . establish that he suffered prejudice as a result of the entry of the order." *Raya-Vaca*, 771 F.3d at 1206 (citing *United States v. Jimenez–Marmolejo*, 104 F.3d 1083, 1085 (9th Cir. 1996); 8 U.S.C. § 1326(d)(3). To do so, he "must show that he had 'plausible grounds for relief' from the removal order." *Raya-Vaca*, 771 F.3d at 1206 (quoting *Jimenez–Marmolejo*, 104 F.3d at 1086). Courts assess whether a defendant has shown that he would plausibly have been granted a discretionary form of relief from removal by conducting a two-step inquiry. See *United States v. Rojas–Pedroza*, 716 F.3d 1253, 1263 (9th Cir. 2013). "First, [the court must] identify the factors relevant to the [agency's] exercise of discretion for the relief being sought." *Id.* Second, it must "'determine

---

[13]Opposition at 7.

[14]*Id*. at 7-8.

5

whether, in light of the factors relevant to the form of relief being sought, and based on the unique circumstances of the [defendant's] own case,' it was plausible that the agency official considering the defendant's case would have granted relief from removal." *Raya-Vaca*, 771 F.3d at 1206 (quoting *Rojas-Pedroza*, 716 F.3d at 1263 (internal quotation marks omitted)).

      An alien in expedited removal proceedings may apply for "withdrawal of application for admission." *Raya-Vaca*, 771 F.3d at 1206; see also 8 U.S.C. § 1225(a)(4); 8 C.F.R. §§ 235.4, 1235.4. In *Raya-Vaca*, the court examined the INS Inspector's Field Manual to identify the factors relevant in assessing whether withdrawal of application for admission was a plausible form of relief. These factors, which are not exclusive, include: "(1) the seriousness of the immigration violation; (2) previous findings of inadmissibility against the alien; (3) intent on the part of the alien to violate the law; (4) ability to easily overcome the ground of inadmissibility; (5) age or poor health of the alien; and (6) other humanitarian or public interest considerations." *Raya-Vaca*, 771 F.3d at 1207 (citations omitted); see also *id*. (citing INS Inspector's Field Manual, § 17.2(a) (2007) (stating that relevant factors "are not limited to" the enumerated considerations)); *Barajas–Alvarado*, 655 F.3d at 1091 (considering unenumerated factors but giving them "little weight" as they were not identified in the Manual). The *Raya-Vaca* court noted that, in applying these factors, "[t]he Inspector's Field Manual provides for a highly individualized determination and instructs officers to 'consider all facts and circumstances related to the case to determine whether permitting withdrawal would be in the best interest of justice.'" *Raya-Vaca*, 771 F.3d at 1207. It also noted that the Manual cautioned that "withdrawal should 'ordinarily' not be permitted 'in situations where there is obvious, deliberate fraud on the part of the applicant.'" *Id.* (stating that the Manual identifies as an example of obvious fraud the use of counterfeit documents). In reviewing the Manual factors in Raya-Vaca's case, the court emphasized that he had to "prove only the plausibility of relief." It commented that, while "Raya-Vaca [could not] succeed by merely showing a 'theoretical[ ]' possibility of relief, . . . he [did not] need [to] prove that relief was probable" or definite. Instead, the court stated, "Raya-Vaca [had] only [to] establish 'some evidentiary basis on which relief could have been granted.'" *Id.* (quoting *United States v. Reyes–Bonilla*, 671 F.3d 1036, 1050 (9th Cir. 2012)).

      As a threshold matter, the court observed that Raya-Vaca had "committed no fraud, let alone

6

obvious or deliberate fraud, when entering the United States," and thus that a "crucial consideration" that "ordinarily" militates against permitting withdrawal was absent. *Id.* at 1208. It nonetheless concluded that the severity of the immigration violation, given Raya-Vaca's six prior illegal entries; the fact that there had been an earlier finding of inadmissibility in connection with a stipulated removal; and the fact that he intended to violate the law, as evidenced by the fact that he walked through the mountains to enter the country, weighed against a finding that it was plausible he would have been granted the relief of withdrawal of application for admission. The Ninth Circuit noted, however, that these factors were "not dispositive," particularly given that the government conceded recidivist immigration violators are permitted to withdraw their applications for admission. *Id.*

Turning to other factors identified in the Manual, the court stated that Raya-Vaca's apparent good health and age and the fact that he could not easily overcome the ground for his inadmissibility did not support a finding that relief was plausible. It concluded, however, that although he had no petition for adjustment of status pending, he might nonetheless have had "a relatively straightforward path to legal status," which was relevant given that immigration officers are directed to consider "all facts and circumstances related to the case." *Id.* The court also concluded that "Raya-Vaca present[ed] significant humanitarian considerations counseling in favor of relief," as his "partner Trisha and their children, in addition to his mother, siblings, and much of his extended family, [lived] in the United States." *Id.* Because there is "a 'compelling humanitarian interest in keeping families united,' [the court concluded] the humanitarian and public interest factors weigh[ed] significantly in Raya-Vaca's favor." *Id*. Finally, it held that "[c]ertain other considerations [weighed] in Raya-Vaca's favor[:] First, his misdemeanor criminal history [wa]s fairly minimal and [did] not appear to have much bearing on the plausibility of relief. Second, Raya-Vaca offer[ed] a record from another case in which [the] withdrawal of application for admission was granted. While [the record did] not explain why relief was granted . . . , it d[id] make clear that even an individual with a conviction for false statement to a federal officer, no pending petitions for legal status, and a prior exclusion order can be permitted to withdraw his application for admission – and thus [that] relief under such circumstances was plausible. Third, Raya–Vaca present[ed] statistics from DHS demonstrating that a significant proportion of aliens apprehended were

permitted to withdraw their applications for admission." *Id.* at 1209. Because he had demonstrated that he had "some evidentiary basis on which relief could have been granted," the court held that Raya-Vaca had a plausible basis for relief. *Id.* at 1209-10.

The government contends *Raya-Vaca* is distinguishable. It notes that, unlike Raya-Vaca, whose criminal history was "fairly minimal," in that it consisted of three misdemeanors, Diaz has two felony drug trafficking convictions[15] – unlawful possession of heroin for sale in violation of California Health and Safety Code § 11352,[16] and possession of methamphetamine for sale in violation of Health and Safety Code § 11378.[17] Because Diaz was convicted of two felony drug trafficking offenses, the government contends he is permanently inadmissible and cannot show prejudice.

An alien who "is or has been an illicit trafficker in any controlled substance . . . is inadmissible" to the United States. 8 U.S.C. § 1182(a)(2)(C). Because not all substances prohibited by California law are "controlled substances" under federal law, the fact that Diaz was convicted of violating these sections of the California Health and Safety Code does not alone demonstrate that he was convicted of possessing a controlled substance for sale. See *Diaz–Vidal v. Gonzales*, 473 F.3d 1072, 1078 (9th Cir. 2007), abrogated on other grounds in *Chuen Piu Kwong v. Holder*, 671 F.3d 872 (9th Cir. 2011). Instead, the court must apply the "modified categorical approach" to look behind the convictions. See *Parrilla v. Gonzales*, 414 F.3d 1038, 1043 (9th Cir. 2005). In so doing,

---

[15] Opposition, Exh. 1 (State Court Felony Complaint and Guilty Plea).

[16] Section 11352(a) provides: "Except as otherwise provided in this division, every person who transports, imports into this state, sells, furnishes, administers, or gives away, or offers to transport, import into this state, sell, furnish, administer, or give away, or attempts to import into this state or transport (1) any controlled substance . . . , unless upon the written prescription of a physician, dentist, podiatrist, or veterinarian licensed to practice in this state, shall be punished by imprisonment pursuant to subdivision (h) of Section 1170 of the Penal Code for three, four, or five years." CAL. HEALTH & SAFETY CODE § 11352(a).

[17] Section 11378 provides: "Except as otherwise provided in Article 7 (commencing with Section 4110) of Chapter 9 of Division 2 of the Business and Professions Code, a person who possesses for sale a controlled substance that meets any of the following criteria shall be punished by imprisonment pursuant to subdivision (h) of Section 1170 of the Penal Code." CAL. HEALTH & SAFETY CODE § 11378(a).

it may consider "the charging documents in conjunction with the plea agreement, the transcript of a plea proceeding, or the judgment to determine whether the defendant pled guilty to the elements of [a controlled substances] crime." *United States v. Corona–Sanchez,* 291 F.3d 1201, 1211 (9th Cir. 2002) (en banc), superseded on other grounds by statute as explained in *United States v. Gomez–Mendez,* 486 F.3d 599, 604-05 (9th Cir. 2007). "[D]ocuments of equal reliability may also be considered," such as minute orders and abstracts of judgment. See *Chuen Piu Kwong*, 671 F.3d at 879.

"Here, the charging document and plea agreement . . . establish that [Diaz's] offense involved heroin, a drug listed in Schedule I of the [Controlled Substances Act ("CSA"), 21 U.S.C. § 802]." *Mielewczyk v. Holder*, 575 F.3d 992, 995 (9th Cir. 2009); 21 C.F.R. § 1308.11(c)(11) (listing "[h]eroin"). The complaint and plea agreement also demonstrate that Diaz pled guilty to possession of methamphetamine for sale; methamphetamine is a Schedule II controlled substance. See 21 C.F.R. § 1308.12(d)(2) (listing "[m]ethametamine, its salts, isomers, and salts of its isomers").

Accordingly, the conviction records establish that Diaz was convicted of illegal trafficking in controlled substances; he is therefore inadmissible under 8 U.S.C. § 1182(a)(2)(C).[18] This,

---

[18]Because he was convicted of trafficking in a controlled substance, moreover, Diaz is not eligible for a discretionary waiver of inadmissibility. See 8 U.S.C. § 1157(c)(3) ("[T]he Attorney General may waive any other provision of such section (*other than paragraph (2)(C)* or subparagraph (A), (B), (C), or (E) of paragraph (3)) with respect to such an alien for humanitarian purposes, to assure family unity, or when it is otherwise in the public interest" (emphasis added)); 8 U.S.C. § 1182(h) (permitting the Attorney General to waive inadmissibility under some circumstances, but omitting subsection (a)(2)(C)); *Siwe v. Holder*, 742 F.3d 603, 609 (5th Cir. 2014) ("waiver may *not* be granted for several grounds of inadmissibility, such as drug trafficking, espionage, and terrorist activities"); *Maiwand v. Gonzales*, 501 F.3d 101, 106 (2d Cir. 2007) ("Unless the alien is inadmissible because of, *inter alia,* his or her involvement in drug trafficking, 8 U.S.C. § 1182(a)(2)(C), the Attorney General may also waive most other grounds for inadmissibility, see 8 U.S.C. § 1157(c)(3) (allowing the Attorney General to waive any ground of inadmissibility except for subsections 1182(a)(2)(C), (3)(A)-(C), (3)(E))"); *Sneddon v. I.N.S.*, 107 F.3d 17, 1997 WL 51668,*2 (9th Cir. Feb. 4, 1997) (Unpub. Disp.) ("The Board properly determined that because Sneddon was originally charged with possession of cocaine for sale, he is an excludable alien under 8 U.S.C. § 1182(a)(2)(C) and independently barred from receiving an adjustment of status or any other discretionary relief from deportation as a result. Further, he is not eligible for a discretionary waiver of his inadmissability"); *Taveras-Lopez v. Reno*, 127 F.Supp.2d 598, 607 (M.D. Pa. 2000) ("[T]he Attorney General does not have the discretion to waive exclusion of an alien 'who the . . . immigration officer knows or has reason to believe is or has been an illicit trafficker in any . . . controlled substance or is or has been a knowing assister, abettor, conspirator,

however, is not determinative, as the form of relief Diaz contends he would have sought is withdrawal of his application for admission. One who is granted this form of relief "depart[s] immediately from the United States." 8 U.S.C. § 1225(a)(4). Diaz argues it is plausible that he would have been eligible for such relief because there is no evidence he committed fraud in connection with his entry into the country, he had only one prior illegal entry at the time of the 2009 expedited removal, he had not previously been found to be inadmissible, and there is no evidence that he, like Raya-Vaca, at any time engaged in alien smuggling. Diaz concedes that he cannot overcome the ground on which he is inadmissible, but asserts that Raya-Vaca too could not easily have overcome the basis for his inadmissibility.

The government countered at the hearing that given his drug trafficking conviction, Diaz cannot show prejudice. Specifically, it asserted that, while there is a theoretical possibility he would

---

or colluder with others in the illicit trafficking in any such controlled substance'"); cf. *United States v. Bayardo-Garcia*, 590 Fed. Appx. 660, 663 (9th Cir. Oct. 24, 2014) (Unpub. Disp.) ("The government conceded at the evidentiary hearing that it did not have the documents to prove that Bayardo–Garcia had been convicted of an aggravated felony, *which would affect his admissibility*" (emphasis added)).

Diaz disputes that he is ineligible for a waiver, citing the Ninth Circuit's decision in *Taniguchi v. Schultz*, 303 F.3d 950, 956 (9th Cir. 2002). He contends that *Taniguchi* stands for the proposition that the Attorney General can waive removal even if the alien has committed an aggravated felony, so long as the alien has been "lawfully admitted for permanent residence" and did not commit the crime after the date of his admission. *Id.* (citing 8 U.S.C. § 1182(h)). Far from supporting his argument, *Taniguchi*, which concerns § 1182(h), actually confirms that Diaz is inadmissible. First, Diaz is not a lawful permanent resident. Second, the introductory language of § 1182(h) states: "The Attorney General may, in his discretion, waive the application of subparagraphs (A)(i)(I), (B), (D), and (E) of subsection (a)(2) of this section and subparagraph (A)(i)(II) of such subsection insofar as it relates to a single offense of simple possession of 30 grams or less of marijuana if. . . ." 8 U.S.C. § 1182(h). Because Diaz's prior convictions did not involve marijuana, this section does not apply. Moreover, as noted, the applicable inadmissibility section is § 1182(a)(2)(C). Section 1182(h) *does not* permit waiver where the underlying conviction falls under § 1182(a)(2)(C). In fact, in determining that waiver was not available in *Sneddon*, the Ninth Circuit cited §§ 1182(a)(2)(C) and (h). See 1997 WL 51668 at *2 ("The Board properly determined that because Sneddon was originally charged with possession of cocaine for sale, he is an excludable alien under 8 U.S.C. § 1182(a)(2)(C) and independently barred from receiving an adjustment of status or any other discretionary relief from deportation as a result. Further, he is not eligible for a discretionary waiver of his inadmissability. See 8 U.S.C. § 1182(h) (prohibiting the Attorney General from waiving excludability under subsection (a)(2)(c))").

10

have been permitted to withdraw his application for admission, it is highly unlikely such relief would have been granted.[19] The court finds this argument unavailing. Although "establishing 'plausibility' requires more than establishing a mere 'possibility'" that the relief will be granted, *United States v. Barajas Alvarado*, 655 F.3d 1077, 1089 (9th Cir. 2011), "[t]he requirement that a pleading proffer 'plausible grounds' for a claim 'does not impose a probability requirement." See *Raya-Vaca*, 771 F.3d at 1207 (citation omitted). Rather, to demonstrate prejudice, Diaz need only establish "some evidentiary basis on which relief could have been granted." *Id*.

Looking at the relevant factors set forth in the Manual, the court agrees with Diaz that there is some evidentiary basis on which relief could have been grated. As a threshold matter, here, as in *Raya-Vaca*, there is no evidence that Diaz committed "fraud, let alone obvious or deliberate fraud, when entering the United States." Thus, this "crucial consideration" does not militate against granting relief. The court also agrees that the seriousness of Diaz's 2009 immigration violation – i.e., the fact that he had entered the United States illegally only one prior time – suggests it is plausible that he might have been granted withdrawal of application for admission. Finally, Diaz is correct that there had been no previous finding of inadmissibility at that time. As in Raya-Vaca's case, however, Diaz had a clear intent to violate the law, as he waded across the Rio Grande River to enter the country. Additionally, Diaz acknowledges that he cannot overcome the grounds for his inadmissibility. Unlike Raya-Vaca, there is not only no "straightforward path to legal status," but under current law, no path whatsoever. Finally, Diaz was neither in poor health nor of advanced age in 2009.

Diaz argues, however, that, like Raya-Vaca, humanitarian factors weigh in favor of a finding that it is plausible he could have been granted withdrawal of application for admission. He asserts that in 2009, he "had a U.S. citizen long-term partner and a U.S. citizen child," and that his child had been born with, and continued to suffer, serious medical problems in 2009.[20] The *Raya-Vaca* court

---

[19]The government based this argument on its belief that it would be unlikely that a Border Patrol agent would grant an alien with a prior drug trafficking conviction withdrawal of application for admission relief. It proffered no evidence suggesting this was the case, however.

[20]Motion at 13.

11

relied heavily on the fact that Raya-Vaca "present[ed] significant humanitarian considerations" because "[his] partner Trisha and their children, in addition to his mother, siblings, and much of his extended family, [lived] in the United States." *Raya-Vaca*, 771 F.3d at 1208. Because there is "a 'compelling humanitarian interest in keeping families united,' [the court concluded] the humanitarian and public interest factors weigh[ed] significantly in Raya-Vaca's favor." *Id*. It was also cognizant that, given the number of family members who were legally in the United States, Raya-Vaca might be able to petition for an adjustment of status and reunite with his family in the future – a prospect expedited removal would have damaged. Here, the situation is somewhat different, in that Diaz is permanently inadmissible. Thus, although the relief that both Raya-Vaca and Diaz might have sought had their due process rights not been violated would not have reunited either man with his family in the United States, but have caused him to "depart immediately" from the United States, there was in Raya-Vaca's case a prospect of future unification that is lacking here.[21] Consequently, while the underlying humanitarian considerations are the same, the practical effect of granting or withholding relief is not.

Nonetheless, it is not clear that the humanitarian considerations factor identified in the Manual is meant to examine the prospects for future reunification or the impact of expedited removal on the likelihood of reunification. Rather, it appears to address the alien's motivation for returning. Cf. *Landon v. Plasencia*, 459 U.S. 21, 34 (1982) (in assessing what procedures due process requires, courts must consider "the interest at stake for the individual"; the "right to rejoin [one's] immediate family . . . ranks high among the interests of the individual," cited with approval in *Raya-Vaca*, 771 F.3d at 1208). Diaz's motivation was as strong, if not stronger, than Raya-Vaca's given the health

---

[21]Raya-Vaca was permitted to withdraw his application "even though he had already been flagged as a potential smuggler by mid–2009 and had stipulated to a formal removal in September 2009." *Raya-Vaca*, 771 F.3d at 1210. "Any alien who at any time knowingly has encouraged, induced, assisted, abetted, or aided any other alien to enter or to try to enter the United States in violation of law is inadmissible." See 8 U.S.C. § 1182(a)(6)(E)(i). It is unclear whether the fact that Raya-Vaca was "flagged as a potential smuggler" is sufficient to make § 1182(a)(6)(E)(i) applicable. That he was suspected of engaging in alien smuggling, however, suggests that Raya-Vaca, not unlike Diaz, had a remote chance of being legally admitted to the United States. The Ninth Circuit nonetheless concluded that he had demonstrated that it was plausible he could have been granted relief.

of his child. In fact, although Diaz cannot legally be admitted as a permanent resident, the government conceded at the hearing that he is not categorically forbidden from reentering the country under limited circumstances. "The Attorney General may . . . in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for *urgent humanitarian reasons* or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Attorney General, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5) (emphasis added). See also *Kwai Fun Wong v. United States*, 373 F.3d 952, 958 (9th Cir. 2004) ("A temporary parolee is considered not to have gained admission to the United States"). "[T]he discretion in making a parole decision is quite broad," although "it is not without limits." *Nadarajah v. Gonzales*, 443 F.3d 1069, 1082 (9th Cir. 2006); see also *id.* ("immigration officials clearly have the authority to deny parole to unadmitted aliens if they can advance a facially legitimate and bona fide reason for doing so. If such a reason is advanced, the denial of parole is essentially unreviewable"). Given the health of his child, the court cannot say there is no possibility Diaz would have been granted such relief even if – as the government suggests – the possibility was remote.[22]

Thus, two of the relevant factors weigh in favor of a finding that it is plausible relief in the

---

[22]On May 21, 2015, Diaz filed a supplemental declaration to which he appended an order granting withdrawal of application for admission to a Mexican national who had been convicted of inducing and encouraging illegal aliens to enter the United States, and of aiding and abetting that crime in violation of 8 U.S.C. § 1324(a)(1)(A)(iv) and (v)(II). (Supplemental Declaration of Craig Harbaugh, Docket No. 42 (May 21, 2015), Exh. A (Order Granting Withdraw of Application).) "Any alien who at any time knowingly has encouraged, induced, assisted, abetted, or aided any other alien to enter or to try to enter the United States in violation of law is inadmissible." 8 U.S.C. § 1182(a)(6)(E)(I). Unlike drug traffickers, alien smugglers are not categorically inadmissible. See 8 U.S.C. § 1157(c)(3) (allowing the Attorney General to waive any basis for inadmissibility except §§ 1182(a)(2)(C), (3)(A)-(C), and (3)(E)). Thus, the decision defendant cites is not directly on point. Nonetheless, it suggests that even aliens convicted of crimes that bar admission absent discretionary waiver can receive withdrawal of application for admission relief.

13

form of withdrawal of application for admission might have been granted had Diaz's due process rights not been violated. Three weigh against such a finding, while the final factor, although it does not weigh as strongly in favor of a finding of plausibility as it did in *Raya-Vaca*, nonetheless supports such a finding. Mindful that Diaz need only "establish 'some evidentiary basis on which relief could have been granted,'" *Raya-Vaca*, 771 F.3d at 1208, the court concludes that he has met his burden of showing that, had his due process rights not been violated in 2009, it is plausible he would have been granted the relief of withdrawal of application for admission.[23] This is particularly true since a 2008 report regarding immigration enforcement actions reflects that 44 percent of aliens subject to expedited removal were afforded this type of relief.[24]

The Ninth Circuit's recent decision in *United States v. Gonzalez-Flores*, _ F.3d _, 2015 WL 3540928, *5 (9th Cir. June 8, 2015), which issued after the hearing on Diaz's motion to dismiss, does not alter this conclusion. *Gonzales-Flores* involved voluntary departure under 8 U.S.C. § 1229c; although, like withdrawal of application for admission, this is a discretionary form of relief, it is assessed differently. Section 1229c allows the Attorney General to "permit an alien voluntarily to depart the United States at the alien's own expense under this subsection, in lieu of being subject to proceedings under section 1229a of this title or prior to the completion of such proceedings, if the alien is not deportable under section 1227(a)(2)(A)(iii) or section 1227(a)(4)(B) of this title." 8 U.S.C. § 1229c(a)(1). In *Matter of Gamboa*, 14 I&N Dec. 244 (BIA 1972), the Board of

---

[23] At the hearing, the government asserted that if Diaz's request to withdraw his application for admission had been granted, he would not have been barred from reentry under § 1182(a)(9), which is a statutory bar that applies in the absence of such relief. Section 1182(a)(9)(A)(i) provides that an "alien who has been ordered removed under section 1225(b)(1) of this title or at the end of proceedings under section 1229a of this title initiated upon the alien's arrival in the United States and who again seeks admission within 5 years of the date of such removal (or within 20 years in the case of a second or subsequent removal or at any time in the case of an alien convicted of an aggravated felony) is inadmissible." 8 U.S.C. § 1182(a)(9)(A)(i). Every alien whose request for withdrawal of application for admission is granted escapes this bar because such relief necessarily precludes removal under § 1225(b)(1). The § 1182(a)(9) bar is applicable for a minimum of five years; in the case of someone like Diaz, it would permanently bar him. Diaz, however, is permanently inadmissible under § 1182(a)(2)(C) given his drug trafficking convictions. An additional permanent bar would not appear to alter his situation in any respect. Accordingly, the court concludes that § 1182(a)(9) adds little to the analysis.

[24] Motion, Exh. F. See also *Raya-Vaca*, 771 F.3d at 1209.

Immigration Appeals set forth a number of factors to be considered in making discretionary determinations regarding voluntary departure applications. These factors include: "the nature and underlying circumstances of the deportation ground at issue; additional violations of the immigration laws; the existence, seriousness, and recency of any criminal record; and other evidence of bad character or the undesirability of the applicant as a permanent resident." *In Re Arguelles Campos*, 22 I. & N. Dec. 811, 817 (BIA 1999) (citing *Gamboa*, 14 I&N Dec. at 248). The Board "stated that discretion may be favorably exercised in the face of adverse factors where there are compensating elements such as long residence here, close family ties in the United States, or humanitarian needs." *Id*. The voluntary departure factors are more heavily focused on past criminal history and the desirability of having the applicant as a permanent resident than are the withdrawal of application for admission factors. For this reason, whether a immigration officer would grant voluntary departure is not relevant to whether the same officer might grant withdrawal of application for admission.[25]

*Gonzales-Flores* is also factually inapposite. There, the court concluded that "Gonzalez–Flores's positive equities [were] minimal: he lived in the United States for five years, he attended high school from age 15 through the eleventh grade, and he held a job for a few years from when he left high school until he committed a robbery. . . . [Thus,] Gonzalez–Flores's equities were 'very few except for those normally associated with any residence of any duration.'" *Id*. Because none of Gonzalez–Flores's family members were United States citizens or lawful permanent residents, and because he resided in the United States for only five years, "he lacked close family ties to the United States or a long residence here, the most typical favorable equities deemed important in other cases." *Id*. Moreover, the record reflected no humanitarian concerns, the critical factor in *Raya-Vaca*. Here, by contrast, Diaz has a long-time U.S. citizen partner and a U.S. citizen child who is in poor health. *Gonzalez-Flores* is therefore distinguishable from this case, which closely parallels *Raya-Vaca*. Accordingly, the court finds that, under *Raya-Vaca*, Diaz has met his

---

[25]Diaz is deportable under 1227(a)(2)(A)(iii) as an aggravated felon, and so cannot avail himself of voluntary departure in any event. See 8 U.S.C. § 1229c(a)(1) (permitting voluntary departure "if the alien is not deportable under section 1227(a)(2)(A)(iii) or section 1227(a)(4)(B) of this title").

burden of showing prejudice, i.e., that there is more than a theoretical possibility his request for withdrawal of application for admission would have been granted. His motion to dismiss must therefore be granted.

### III. CONCLUSION

For the reasons stated, Diaz's motion to dismiss is granted.

DATED: July 2, 2015

_____
MARGARET M. MORROW
UNITED STATES DISTRICT JUDGE